In The United States District Court
For The District Of Delaware

Donald F. Bass,
     Plaintiff,

V.

Thomas Carrall, et. al,
     Defendant's

Civ. Action No. 07-25-JJF



FILED

JUL 27 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

BD Scanned

## Motion For Leave To File An Amended Complaint

Plaintiff Donald F. Bass, pursuant to Rules 15(a) and 19(a),
Fed. R. Civ. P. requests leave to file an amended complaint
to include different facts, and to add a new legal claim.

1. The plaintiff in his original complaint failed to state any
allegations that personally involved or had any supervisory
liability alleging a constitutional deprivation towards
Warden Thomas Carrall, Deputy Warden Piercer, Deputy Warden
Betty Burris, Security Chief David Holman, Capt. Burton,
Lt. Rider, I.G.C. Cpl. Lise Merson, Sgt. Glick, C/o Gavin, C/o Passley,
C/o White, Sgt. Carter, C/o Canon.

2. Since the filing of the complaint the plaintiff has determined the Defendant's Personal Involvement, and different facts amounting to new legal claims towards Defendant's, and would like to amended the complaint to reflect the identity and actions of officer's: Warden Thomas Carroll, Deputy Warden Piercer, Deputy warden Betty Burris, Security Chief David Holman, Capt. Burton, Lt. Rider, I.G.C. Cpl. Lise Merson, Sgt. Glick, C/o Gavin, C/o Passley, C/oWhite, Sgt. Carter, C/o Canon, and new Defendant's, Sgt. Travis Branch, Sgt. Dynowski, C/o Stevens, Lt. Welcome, S. Lt. Profaci, C/o Knowles, C/o Jordan

3. This Court should grant leave freely to amend a complaint. Foman V. Davis, 371 U.S. 178, 182, 83 S. Ct. 227 (1962) Interroyal Corp V. Sponseller, 889 F. 2d 108, 112 (6th Cir) cert. denied, 494 U.S 1091 (1990).

Dated: July 24, 2007

Respectfully Submitted,

Mr. Don. F. Bass

Donald F. Bass
SBI # 187042
Delaware Correctional Center
1181 PaDDock Road
Smyrna, Delaware 19977



Donald C2.10
SBI# 1870
Delaware
1181 Paddock Road
Smyrna, De 19477

Peter T. Dalleo
Clerk Of Court
844 N. King Street, Lockerbox 18
Wilmington, Delaware 19801-3570

In The United States District Court
For The District of Delaware

Donald F. Bass,
        Plaintiff,

V.

Warden Thomas Carroll, Deputy Warden
Piercer, Deputy Warden Betty Burris,
Security Chief David Holman, Capt. Burton,
Lt. Rider, IGC. Cpl. Lise Merson, Sgt. Glick,
C/o Gavin, C/o Passley, C/o White, Sgt. Carter,
C/o Canon, Lt. Welcome, S.Lt. Profaci, C/o Stevens,
C/o Knowles, Sgt. Travis Branch, Sgt. Dymowski
C/o Jordan
                Defendants,

AMENDED COMPLAINT

Jury Trial Demanded

1. The Plaintiff Donald F. Bass, was incarcerated at Delaware Correctional Center (D.C.C) during the events described in this complaint.

2. Defendant's Gavin, Passley, White, Canon, Steven, Knowles, Jordan, are Correctional officer employed at Delaware Correctional Center. They are sued in their individual and official capacities.

3. Defendant Lise Merson, is a corporal designated to handle inmate grievances at Delaware Correctional Center. She is sued in her individual and official capacities

4. Defendant's Glick, Carter, Travis Branch, Dymowski, are sergeants at Delaware Correctional Center. They are sued in their individual and official capacities.

5. Defendant's Rider, Welcome, are lieutenant at Delaware Correctional Center, they implement prescribed policies and procedures, insures the enforcement of institutional rules and regulations and interprets for staff and inmates. They are sued in their individual and official capacities.

6. Defendant Profaci is a Staff lieutenant at Delaware Correctional Center, she directs and participates in the maintenance of discipline, order, Security and implement prescribed policies and proedures, insures the enforcement of institutional rules and regulations and interprets for staff and inmates. She is sued in her individual and official capacities.

7. Defendant Burton, is a Captain at the Delaware Correctional Center, and is in charge of over seeing operations on the 12-8 shift, He is sued in his individual and official capacities.

8. Defendant David Holman, is the security chief at Delaware Correctional Center and is in charge of the supervision and discipline of all correctional staff at Delaware Correctional Center. He is sued in his individual and official capacities.

9. Defendant Betty Burris is the Deputy Warden for administration at Delaware Correctional Center and the warden/warden's designee in charge of grievance procedure. She is sued in her individual and offical capacities.

10. Defendant Piercer is the Deputy Warden of operation at Delaware Correctional Center. Directs through subordinate supervisors and managers, the safety and security functions of the institution. He is sued in his individual and official capacities.

11. Defendant Thomas Carroll is the Warden of Delaware Correctional Center. He plans, directs, coordinates and monitors the security operations of the institution ensuring polices, procedures, rules, and regulation enforcement. He is sued in his individual and official capacities.

12. All the defendants have acted, and continue to act, under of state law at all times relevant to this complaint.

Facts

13. On September 11, 2006 the plaintiff was moved to maximum Housing Unit (MHU) Building #23.

14. The (MHU) Building #23 is divided into 4 individual tiers. There is a design capacity of 196 inmates, 49 inmates per tier. There is 25 cell per tier.

15. There is one sergeant assigned to 4 tiers. There's a diffident sergeant assigned to unit supervisor. There is a 12 a.m. to 8 a.m. sergeant, There is a 8 a.m to 4 p.m unit sergeant and there is a 4 p.m to 12 a.m unit sergeant.

16. There is a lieutenant assigned to manage the entire maximum Housing Unit (MHU) one per each shift.

17. On September 12, 2006, the plaintiff's door was opened about 5:00 a.m for breakfast. The plaintiff got dressed and follow the other inmates off the tier to where a crowd of inmates had formed waiting on the first security slider to open.

18. When the first slider opened, the C/o order all the inmate into the area. By plaintiff being new to the tier the plaintiff was bring up the rear of the crowd.

19. The inmates started complaining about there not being enough room in the area to the C/o. The C/o replied "I guess you don't want to eat." Then the inmates began to hollar at each other and push pass each other.

20. After squeezing into the area the first slider was closed leaving the plaintiff confined to the area with a over-whelming crowd of inmates.

21. The plaintiff was held in this area approximately 3 to 4 minutes, In the 3 to 4 minute time period that the plaintiff was held in this area the window began to fog to fog up, due to the lack of oxygen.

22. The area is approximately 20 Feet in length and 7 Feet in width there is no ventilation system, No toilet, drinking fountain or seats.

23. After arriving in the messhall and receiving my tray, I had been eating approximately 5 minutes, when i heard the C/o holler "2 minutes" and 40 to 50 seconds later he said "Trays up, Let go, Trays up."

24. Without finishing my breakfast, I had to put my tray up.

25. When i got back to the security slider, there was several inmates standing in front of the security slider complaining about squeezing into such a small area The C/o begin to order us into the area, and we complied.

26. Later that day approximately 11:40 a.m my door open for Lunch.

27. The Plaintiff followed the other inmate off the tier again. When the plaintiff reached the first sliding door, there was a few inmates standing around talking, And there was no problem entering into the slider.

28. Later that after noon my door was open again for dinner. When the plaintiff reached the first slider, there was a small group of inmates and there was no commotion.

29. After receiving my Dinner tray, I was in the middle of my dinner and the C/o order the inmate to put there "tray up." I had only been seated approximately 5 minutes.

30. On September 13, 2006, At approximately 5:00 a.m. my cell door was open for breakfast, I got dressed and followed the other inmates off the tier again.

31. When the plaintiff came to the first slider, there was a large crowd of approximately 38-40 inmates standing around. The C/o began ordering the inmates into the area between the security sliders.

32. The inmates started hollaring and complaining about the lack of room in the area, and the inmates who failed to wash there faces and brush there teeth, and Known homosexual bumping and rubbing against them, And the amount of time in which we were being held in there.

33. The C/o stated to plaintiff and other inmates," if they wanted to to eat, they had better inter the slider." and then started hollering at the inmate that had inter "to make room," Plaintiff along with other inmates began to push there way into the area.

34. After intering the area and the slider were closed, the plaintiff became extremely paranoid because of the tension between the inmate due to the pushing and shoving there way into the area.

35. Later that day approximately 11:30 a.m. the door was opened again for lunch. The plaintiff walked of the tier to the first slider and noticed, there was no crowd nor commotion. Just a small group of approximately 16 inmates waiting on the slider to open.

36. On September 14, 2006. approximately 5:00 a.m the plaintiff's cell was opened for breakfast. And again the plaintiff was ordered to squeeze and or push and shove his way into the area inorder to ao to breakfast. Despite the pleading of plaintiff and other inmates concerns. The crowd of approximately 38 to 40 inmates had to squeeze in to the area if they wanted to eat.

37. On September 15, 2006. At approximately 5:00 a.m. the plaintiff's door open for breakfast. The plaintiff hurried off the tier in an attempt to get into the area between the slider ahead of the other inmates.

38. When the plaintiff enter the area there was approximately 12 other inmates already insider the area, the C/o began to order the other inmates into the area.

39. The crowd in the back of the plaintiff began to push the group forward in an attempt to make room for those in the back.

40. The inmate in front of the plaintiff had a open sore in the back of his head, the sore was leaking a thick yellowish matter with blood intertwined.

41. The second security slider closed and the plaintiff was forced to stand within a foot of the inmates sore. Plaintiff was so close he could smell and see the yellowish matter as it slowly rowed down the back of the inmates neck, there was approximately 38 to 40 other inmate inside this small area restricting the plaintiffs movement.

42. There was no ventilation system in the area, causing the plaintiff to feel as if he was going to vomit. The plaintiff was force to stand there for approximately 4 to 5 minutes.

43. When the plaintiff reached the messhall, plaintiff was still feeling sick, plaintiff asked the C/o if he could use the bathroom, the C/o told the plaintiff if he wanted to use the bathroom he had to wait into the group finished eating.

44. The plaintiff pointed out to the C/o that there was a bathroom right there in the messhall. The C/o stated "that bathroom is locked and you got to wait."

45. After a week of being order to squeeze into the area between the two security sliders with such a large crowd of inmates. The plaintiff went to the building sergeant on September 18, 2006.

45. On September 18, 2006 when the doors open for breakfast the plaintiff followed the other inmates off the tier to the first slider, there was a large crowd of approximately 38-40 inmates standing around the first slider cursing and complaining about there being to many inmate for the area.

46. The plaintiff was at the back of the crowd, when the C/o started ordering the inmates into the area. The plaintiff told the C/o "there is completely to many of us to be forcing us all into this area at the same time."

47. The C/o said "if you want to eat, you better get your ass in that slider."

48. When the plaintiff arrived in the messhall, the plaintiff told sergeant carter that it was to many inmates be" order into the area between the sliders at the same time.

49. Sergeant Carter told the plaintiff "this was jail and plaintiff better get use to it if plaintiff wanted to eat."

50. On September 21, 2006 after eating lunch the plaintiff talk to lieutenat Welcome concerning the dangerous over crowding of the area between the sliders.

51. Lieutenat Welcome inform the plaintiff that "the policy on 8a.m to 4p.m is to send half the tier at a time, never the hole tier at the same time." And he had no control over how the 12a.m to 8a.m lieutenat ran breakfast.

52. On or about September 29, 2006 the plaintiff talked with Staff lieutenat Profaci concerning the dangerous over crowding of the area between the two security sliders. The plaintiff inform S/Lt Profaci that the 12a.m to 8a.m shift were placing 38 or more inmate into the area between the security slider at the same time creating a dangerous safety and health hazard.

53. S/Lt Profaci stated "No one else is complaining, Why are you?"

54. Plaintiff told S/Lt Profaci that he wasn't concerned about other inmates complaining. He is concerned about being order to squeeze into such a dangerous area and not having enough time to eat his meals.

55. S/Lt Profaci inform the plaintiff "that's not her policy to run the hole building at the same time, and it don't happen on her shift and

55. " The plaintiff had ten minutes from the time the last man in line sat down to finish plaintiff's food",

56. On October 3, 2006, the plaintiff's door was opend about 5:00 a.m for breakfast. The plaintiff followed the other inmates off the tier to where a crowd of inmates had formed outsided the first slider,

57. The inmates standing outside the slider was complaining about there not being enough room, The C/o replied " you guys are holding up the other's" "Lat's go the other's are trying to eat,"

58. The plaintiff tryed to tell the C/o there wasn't enough room inside the small area for so many inmates. The C/o told the plaintiff " you been getting in there, and if you want to eat, you better get in there."

59. The plaintiff told the c/o " the facility does not have a policy that requires the hole tier to squeeze into that small area,"

60. The C/o told the plaintiff " if you don't like it file a grievance,"

61. The plaintiff filed and grievance when he returned to the tier, After filing the grievance plaintiff did not receive any acknowledgment from the institutions employee designated to handle inmate grievances.

62. The conditions Continued, On October 19, 2006, The plaintiff was on his way to breakfast and enter the area between the two security sliders. After entering the area the c/o ordered the remainder of the inmates to " squeeze in."

63. Due to the overwhelming amount of inmates, the crowd begin pushing and shoving and swearing at each other, leaving the plaintiff to believe he better start fighting before someone hits him or he suffocates, there was all kinds of thoughts running through the plaintiff mind.

64. When the plaintiff arrived in the mess hall, the plaintiff told sergeant Carter that the hole tier was released at the sametime again for breakfast. And there is more then 40 inmate in the area between the slider, And plaintiff was in fear for his safety.

65. Sgt. Carter told the plaintiff " he need to get use to it because that's how chow is ran" Plaintiff told sgt. Carter that's not the institutions policy to run the hole tier at the same time, and the area has a design capacity determined by the state fire marshal. Someone going to get hurt in there. Sgt. Carter stated " file another grievance" then begin to laugh.

66. When the plaintiff returned to the unit, the plaintiff filed an grievance concerning the matter. After filing the grievance plaintiff did not receive any acknowledgment from the   —

66. institutions employee designated to handle inmates grievances.

67. On November 27, 2006 chow was called at 10:50 A.M. After arriving in the chow Hall a great deal of time passed and they were not serving chow. Sgt. Travis Branch gave all inmates a direct order "No talking in the chow Hall." The plaintiff walked over to Sgt. Branch and stated "I know there is no talking in the chow hall, here's my ID, I would like to know why they are not serving chow and i just have to stand here."

68. Sgt. Branch told me to get back in line before she sent me back to my building. She then placed her hand on her mace cannister. plaintiff asked her "if he could see the lieutenant." Sgt. Branch then ordered the plaintiff out of the Chow hall. Plaintiff asked Sgt. Branch "if she was going to bring the plaintiff a lunch" sgt. Branch replied "you had your chance to eat."

69. As the plaintiff was being escorted out of the chow hall, S/Lt. Profaci was standing outside the door, plaintiff asked S/Lt. Profaci "would he receive a lunch tray back at the building." She replied "No." Plaintiff told her "I wanted my lunch." S/Lt. Profaci told the plaintiff "to move on."

70. When the plaintiff returned to the unit, the plaintiff filed an grievance because this was not the first time he was denied or forbidden the opportunity to eat, as a form of punishment.

71. On December 6, 2006, The plaintiff was hustled out of the chow hall without being allowed to complete his meal. Every day the plaintiff goes to chow he times the amount of time he is given to eat because he seldom gets an opportunity to finish a meal. The plaintiff was informed by S\Lt. Profaci before this incident that the policy was "we had ten minutes from the time the last man in line sat down"

72. When the plaintiff was order to put his tray up, He looked at his watch to see how much time he was given to eat. The showed 5 minutes and 41 seconds. The plaintiff informed C/o Knowles this is just about every day he works.

73. When the plaintiff returned to the unit, he filed an grievance concerning this matter. The plaintiff received a copy of the Grievance but it wasn't heard by the grievance committee as of this date July 20, 2007.

74. On December 24, 2006 at approximately 4:50 A.M. Breakfast was called for A-tier in building 23. Plaintiff walked off the tier towards the first sliding door, where a crowd of inmates had formed

75. C/o Jordan was at the back of the crowed confirming the head count of thirty eight inmates over his radio transmitter. After confirming the count C/o Jordan begin to order the crowd to "Pack it in" to the area between the sliding doors.

76. The plaintiff complied with C/o Jordan order and enter the area, upon entering the area the inmates in the back of the crowd started hollering "move the fuck up" and began to push the crowd, the inmates in front began to hollar back "ain't no fucken room", C/o Jordan began to hollar " you've been getting in there, lets go pack it in."

77. After all the inmate had squeezed into the area the door was closed, thirty eight inmates were confined to this area, Approximately 20 feet in length and 7 feet in width with no ventilation system, for approximately 3 to 4 minutes into the hall was clear of inmates.

78. While plaintiff was waiting on the door to open, the inmate infront of plaintiff turned around and locked plaintiff directly in the eyes and started hollaring "I'll kill him and take him to the moon" The plaintiff quickly realize this inmate was seriously mentally ill, because the inmate continued to talk to himself and burst into a tantrum. The plaintiff tryed to step backwards so he would not be hit by the mentally ill inmate, but do to the overwhelming crowd in the course of plaintiff stepping backwards, the plaintiff stepped on inmate Jason E. Turner foot and sprained plaintiff's ankle.

79. Inmate Turner pushed plaintiff into inmate Victor Sanchez. Plaintiff became upset that inmate Turner pushed plaintiff and grabbed inmate Turner up by his collar, inmate Sanchez intervend and stated "Come on man it's not his fault were in here like this."

80. After breakfast plaintiff went to C/O Jordan along with inmate Jason E. Turner and informed C/O Jordan plaintiff stepped on inmate Turner foot and sprained his ankle and would like to see the nurse, C/O Jordan told plaintiff to take a aspirin and started laughing, Plaintiff then asked C/O Jordan to write an incident report concerning the incident, C/O Jordan told plaintiff "if he didn't see it he couldn't write it up."

81. After the shift had changed, approximately 9:15 a.m. plaintiff went to C/O Johnson and explained what had happened on the 12 to 8 shift, Then requested to see the nurse again, C/O Johnson informed the nurse of the incident and plaintiff was taken out to see the nurse, The nurse said plaintiff's ankle had swollen up and gave plaintiff something for the pain,

82. On April 19, 2007 the plaintiff carried a banana to the chow hall, After arriving in the chow hall the plaintiff pull the banana out to eat with his lunch, Sgt. Carter approach me and told plaintiff to give him the banana, plaintiff asked "Why? Sgt. Carter stated "I'm not going to ask you again" plaintiff complied and asked "what are you taking my banana for?" Sgt. Carter stated "I told you i wasn't going to ask you again," then called and had me escorted out of the chow hall,

83. Sgt. Dymowski and C/o Stevens came to escort me back to the building, I told Sgt. Dymowski i didn't eat and i would like a lunch tray, he stated "You had your chance to eat"

84. No one fed me and i didn't receive a incident report. I filed a grievance and requested 1.) To be compensated for the continuous deprivation of food as punishment for my actions. 2.] To be shown a copy of Doc procedures informing me of DOC policy forbidding me from being fed as a from of punishment.

85. The Grievance was send back to me signed by the grievance Chairperson stating "IGC does not award monetary damages"

86. The actions of defendants Carroll, Piercer, Burris, Holman, Burton, Rider, Merson, Glick, Gavin, Passley, White, Carter, Cauon, Welcome, Profaci, Jordan, subjected the plaintiff to unconstitutional conditions of of confinement pursuant to a "practice" at the Delaware Correct-ional Center of subjecting the plaintiff to an substantial risk of serious harm and intolerable conditions of confinement, Constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

87. The actions of defendants Carroll, Piercer, Burris, Holman, Welcome, Profaci, Carter, Branch, Dymowski, Knowles, Merson, stevens, subjected the plaintiff to an unconstitutional depri-vation of food pursuant to a "practice and policy" at the Delaware Correctional center constituting cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

88: The refusal of C/o Jordan to admit plaintiff to the prison medical center for treatment of plaintiff's injury to his ankle constitutes deliberate indifference to plaintiff's medical need in violation of the Eighth Amendment of the united state Constitution.

89. The failure of defendants Carroll, Piercer, Burris, Holman, Burton, Glick, Merson, Carter, Rider, Gavin, Passley, White, Welcome, Profaci, Canon, Jordan, to curb the substantial risk of serious harm under such hazardous condition Costituted deliberate indifference and Contributed to and proximately caused the above described violation of Eighth Amendment constitution.

WHEREFORE, plaintiff requests that the Court grant the following relief:

A. Issue a declaratory judgment stating that:

1. To forbid the plaintiff from being fed as a from of punishment by defendants Carroll, Piercer, Burris, Holman, Welcome, Profaci, Carter, Branch, Dymowski, Knowles, Merson, Stevens, Violated the plaintiff's rights under the Eighth Amendment to the United States Constitution.

2. The mental and physical injury suffed by the plaintiff's intolerable conditions of confinement by defendants Carroll, Piercer, Burris, Holman, Welcome, Profaci, Carter, Branch, Dymnski, Knowles, Merson, Stevens, Canon, Jordan, Passley, White, Glick,

Burton, Gavin, Rider, Violated the Plaintiff rights under the Eight Amendment to the United States Constitution and constituted gross negligence or deliberate indifference on the part of their superiors and municipality.

B. Award compensatory damages jointly and severally against defendants Carroll, Piercer, Burris, Holman Burton, Rider, Merson, Glick, Gavin, Passley, White, Carter, Canon, Welcome, Profaci, Stevens, Knowles, Travis Branch, Dymowski, Jordan. for the mental and physical injuries sustained as a result of the plaintiff's intolerable conditions of confinement.

C. Award punitive damages against defendants Carroll, Piercer, Burris, Holman, Burton, Rider, Merson, Glick, Gavin, Passley, White, Carter, Canon, Welcome, Profaci, Stevens, Knowles, Branch, Dymowski, Jordan.

D. Grant such other relief as it may appear that plaintiff is entitled.

I declare under penalty of perjury the foregoing is ture and Correct.

Signed ___24___ day of ___July___, ___2007___

Mr. Don F. Boss
signature of Plaintiff



$01.99^0
02.14
0004608975
MAILED FROM ZIP CODE 19977

Donald
ST# 1876
Delaware
1181 Paddock Road
Smyrna, De 19477

Peter T. Dalleo
Clerk of court
844 N. King Street, Lockerbox 18
Wilmington, Delaware 19801-3570



(Rev. 5/05)

**FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

(1) **Donald F. Bass**
    _____
    (Name of Plaintiff)        (Inmate Number)


_____
    (Complete Address with zip code)


(2)_____
    (Name of Plaintiff)        (Inmate Number)


_____
    (Complete Address with zip code)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

                vs.

(1) **Thomas Carroll**
    _____

(2) **Piercer**
    _____

(3) **Betty Burris**
    _____
         (Names of Defendants)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

: 
: 
: 
: 
: 
: 
: 
: _____
:         (Case Number)
: ( to be assigned by U.S. District Court)
: 
: 
: 
: 
: 
: 
: 
:   **CIVIL COMPLAINT**
: 
: 
: 
:   • •  Jury Trial Requested
: 
: 
: 

**I.    PREVIOUS LAWSUITS**

A.    If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number
      including year, as well as the name of the judicial officer to whom it was assigned:

_____

_____

_____

_____

_____

_____

4. David Holman
5. Burton
6. Rider
7. Welcome
8. Profaci
9. Lise Merson
10. Carter
11. Glick
12. Debbie Scott
13. Jordan
14. Gavin
15. Passley
16. White
17. Canon

II.    **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A.    Is there a prisoner grievance procedure available at your present institution?    ·✓Yes    · ·No

B.    Have you fully exhausted your available administrative remedies regarding each of your present claims?    · ·Yes    ·✓No

C.    If your answer to "B" is <u>Yes</u>:

1.  What steps did you take? _____

_____

2.  What was the result? _____

_____

D.    If your answer to "B" is <u>No</u>, explain why not: To prevent the continuous

disregard for my health and safety

III.    **DEFENDANTS** (in order listed on the caption)

(1) Name of first defendant: Thomas Carroll

Employed as Warden ____ at Delaware Correctional Center

Mailing address with zip code: 1181 Paddock Road, Smyrna, Del

19977

(2) Name of second defendant: Piercer

Employed as Dep. Warden ____ at Delaware Correctional Center

Mailing address with zip code: 1181 Paddock Road, Smyrna, Del

19977

(3) Name of third defendant: Betty Burris

Employed as Dep. Warden ____ at ~~1181 Paddock Road~~ D.C.C

Mailing address with zip code: 1181 Paddock Road, Smyrna, Del

1181

(List any additional defendants, their employment, and addresses with zip codes, on extra sheets if necessary)

2

Defendant's PIV Order

4.) Name: David Holman, Employed as: Security chief at Delaware Correctional Center, mailing address: 1181 Paddock Road, Smyrna Del 19977,

5.) Name: Burton, Employed as: Capt, at Delaware Correctional center, Mailing address: 1181 Paddock Road, Smyrna Del 19977,

6.) Name: Rider, Employed as: Lt, at Delaware correctional center, Mailing address: 1181 Paddock Road, Smyrna Del 19977,

7.) Name: Welcome, Employed as: Lt, at Delaware Correctional Center, Mailing address: 1181 Paddock Road, Smyrna Del 19877,

8.) Name: Profaci, Employed as: S/Lt, at Delaware Correctional center, Mailing address: 1181 Paddock Road, Smyrna Del 19977,

9.) Name: Lise Merson, Employed as: I.G.C. Cpl., at Delaware Correctional Center, Mailing address: 1181 Paddock Road, Smyrna Del 19977,

10.) Name: Carter, Employed as: Sgt, at Delaware Correctional Center, Mailing address: 1181 Paddock Road, Smyrna Del 19977,

11.) Name: Glick, Employed as: Sgt, at Delaware Correctional Center, Mailing address: 1181 Paddock Road, Smyrna Del 19977,

12.) Name: Debbie Scott, Employed as: C/o, at Delaware Correctional Center, Mailing address: 1181 Paddock Road, Smyrna Del 19977,

13.) Name: Jordan: Employed as: C/o, at Delaware Correctional Center, mailing address: 1181 Paddock Road, Smyrna Del 19977,

14.) Name: Gavin, Employed as: C/o, at Delaware Correctional Center, Mailing address: 1181 Paddock Road, Smyrna Del 19977,

15.) Name: Passley: Employed as: C/o, at Delaware Correctional Center, mailing address: 1181 Paddock Road, Smyrna Del 19977,

16.) Name: White: Employed as: C/o, at Delaware correctional Center, mailing address: 1181 Paddock Road, Smyrna Del 19977

17.) Name: Canon: Employed as: C/o, at Delaware Correctional Center, mailing address: 1181 Paddock Road, Smyrna Del 19977

**IV. STATEMENT OF CLAIM**

(State as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets of paper if necessary.)

1. On December 24, 2006 at approximately 4:50 A.M. Breakfast was called for A-tier in building 23, Plaintiff walked off the tier towards the tiers sliding doors where a crowd of inmates had formed,

2. C/o Jordan was at the back of the crowd confirming the head count of thirty eight inmates over his radio transmitter, After confirming the count C/o Jordan begin to order the crowd to "pack it in" to the area between the sliding doors,

3. Plaintiff complied with C/o Jordan order and enter the area, upon entering the area the inmates in the back of the crowd started hollering "move the fuck up" and began to push the crowd, the inmates in front began to holler back "ain't no fucken room", C/o Jordan began to holler " you've been getting in there, lets go pack it in,"

**V. RELIEF**

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

1. A) Issue a declaratory judgment stating that: The mental and physical injury suffered by the plaintiff due to all above name defendant's violated the plaintiff rights under the Eight and fourteenth Amendment to the United States Constitution and constituted deliberate indifference to Plaintiff's safety in Violation of the Eighth Amendment,

4. After all the inmates had squeezed into the area the door was closed, thirty eight inmates were confined to this area, Approximately 20 feet in length and 7 feet in width, for approximately 3 to 4 minutes into the hall was clear of inmates,

5. While plaintiff was waiting on the door to open, the inmate infront of plaintiff turned around and looked plaintiff directly in the eyes and stated " I'll Kill him and take him to the moon," Plaintiff quickly realize this inmate was seriously mentally ill, because the inmate continued to talk to him self and burst into a tantrum,

6. Plaintiff tryed to step backwards, so plaintiff would not be hit by the mentally ill inmate, but do to the area in which plaintiff was confined, plaintiff's movement was restricted,

7. In the course of plaintiff stepping backwards, plaintiff stepped on inmate Jason E. Turner foot and sprained plaintiff's ankle, inmate Turner pushed plaintiff into inmate Victor Sanchez, Plaintiff became upset that inmate Turner pushed plaintiff and grabbed inmate Turner up by his collar, inmate Sanchez intervend and stated "Come on man it's not his fault were in here like this,"

8. After breakfast plaintiff went to C/o Jordan along with inmate Jason E. Turner and informed C/o Jordan plaintiff stepped on inmate Turner foot and sprained his ankle and would like to see the nurse, C/o Jordan told plaintiff to take a aspirin and started laughing, plaintiff then asked C/o Jordan to write an incident report concerning the incident C/o Jordan told plaintiff "if he didn't see it he couldn't write it up,"

9. After the shift had changed, approximately 9:15 A.M. plaintiff went to C/o Johnson and explained what had happened on the 12-8 Shift, then requested to see the nurse again, C/o Johnson informed the nurse of the incident and plaintiff was taken out to see the nurse, the nurse said plaintiff's ankle had swollen up and gave plaintiff something for the pain,

10. Long before this incident occurred plaintiff made numerous complaints to Sgt. Carter on the 12-8 shift in building 23, concerning the dangerous safety and health hazards plaintiff was forced to face each morning when confined to this area, Sgt. Carter told plaintiff " this was jail and plaintiff better get use to it if plaintiff wanted to eat "

11. Plaintiff complained to 8-4 shift building Lt. Welcome concerning plaintiff's concern for plaintiff's safety and health under such hazardous conditions when order to squeeze into such a small area with such an overwhelming amount of inmates, Plaintiff was told by Lt. Welcome " he had no control over how 12-8 shift's building lieutenant ran breakfast,

12. Plaintiff complained to S/Lt. Profaci on the 8-4 shift concerning plaintiff concern for plaintiff's safety and health when confined with such an overwhelming amount of inmates in such a small area, S/Lt. Profaci stated " No one else is complaining," then asked, " Why are you"? Plaintiff informed S/Lt. Profaci, plaintiff was not concerned if the other inmates were complaining, plaintiff was concern about being order to squeeze into such a dangerous area and not having enough time to eat his meals, S/Lt Profaci told plaintiff " plaintiff had ten minutes from the time the last man in line sat down to finish plaintiff's food and that's not her policy to run the hole building a tier by tier "it doesn't happen on her shift,"

13. Plaintiff has filed numerous grievances between September 10, 2006 and December 2006, concerning his fear of being confined under such dangerous and unhealthy conditions long before this incident occurred, but the prison administration has fail to act and investigate or tryed to reduce the amount of inmates that occupies this area at one time on the 12-8 shift,

14. Plaintiff filed sick call slips requesting to see the prison Mental health psychologist long before this incident occurred, Due to the emotional distress plaintiff has been suffering caused by the constant threat plaintiff feels when confined to this area with such a overwhelming crowd of inmates,

Claims for Relief

15. The actions of defendants caused mental and physical injury by confining the plaintiff in a area were plaintiff faced substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it, constituted cruel and unusual punishment in violation of the Eighth Amendment Right,

16. The failure of defendants to take disciplinary or other action to curb the substantial risk of serious harm under such hazardous condition constituted deliberate indifference and contributed to and proximately caused the above described violation of Eighth Amendment Rights and Mental and physical injuries,

17. The refusal of S/o Jordan to admit plaintiff to the prison medical center for treatment of plaintiff's injury to plaintiff's ankle constitutes deliberate indifference to plaintiff medical need in violation of the Eighth Amedment of the United States Constitution,

2. B) Issue a Temporary Restraining order and a preliminary injunction ordering the defendant's to: 1) Immediately arrange for the 12-8 shift to reduce the over crowding between the sliding doors, 2) Immediately arrange for the plaintiff's ankle to be examined by a qualified physician 3) Immediately arrange for the fire Marshal to inspect the area and give his expert opinion on the capacity this area should hold.

3. C) 1) Award compensatory damages jointly and severally against defendant's for the mental and physical injuries sustained as a result of the plaintiff inhumane confinement 2) Award punitive damages against defendant's

D. Grant such other relief as it may appear that plaintiff is entitled.

_____

I declare under penalty of perjury that the foregoing is true and correct.

Signed this ____5____ day of ___January_____, 2007____.

_Mr. Don. J. Bass_
(Signature of Plaintiff 1)

_____
(Signature of Plaintiff 2)

_____
(Signature of Plaintiff 3)

4

AO 240 (Rev. 10/03)
DELAWARE (Rev. 4/05)

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

Donald E. Bass
_____
Plaintiff

V.

D.C.C. Officials
_____
Defendant(s)

### APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES AND AFFIDAVIT

CASE NUMBER:

I, Donald F. Bass _____ declare that I am the (check appropriate box)

•✔ Petitioner/Plaintiff/Movant        • • Other

in the above-entitled proceeding; that in support of my request to proceed without prepayment of fees or costs under 28 USC §1915, I declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief sought in the complaint/petition/motion.

In support of this application, I answer the following questions under penalty of perjury:

1.    Are you currently incarcerated?    • ✔Yes    • •No    (If "No" go to Question 2)

If "YES" state the place of your incarceration Delaware Correctional Center

**Inmate Identification Number (Required):** # 187042

Are you employed at the institution? no    Do you receive any payment from the institution? no

_Attach a ledger sheet from the institution of your incarceration showing at least the past **six months'** transactions_

2.    Are you currently employed?    • •Yes    •✔No

a.    If the answer is "YES" state the amount of your take-home salary or wages and pay period a and give the name and address of your employer.

b.    If the answer is "NO" state the date of your last employment, the amount of your take-home salary or wages and pay period and the name and address of your last employer. N/A

3.    In the past 12 twelve months have you received any money from any of the following sources?

a.    Business, profession or other self-employment        • • Yes        •✔No
b.    Rent payments, interest or dividends                • • Yes        •✔No
c.    Pensions, annuities or life insurance payments       • • Yes        •✔No
d.    Disability or workers compensation payments          • •Yes         •✔No
e.    Gifts or inheritances                              •✔Yes          • •No
f.    Any other sources                                  • • Yes        •✔No

If the answer to any of the above is "YES" describe each source of money and state the amount received _AND_ what you expect you will continue to receive.    As a Gift from family $20 Dollar's

AO 240 Reverse (Rev. 10/03)
DELAWARE (Rev. 4/05)

4.   Do you have any cash or checking or savings accounts?                    • • Yes      •✓No

     If "Yes" state the total amount $ _____ 00 _____

5.   Do you own any real estate, stocks, bonds, securities, other financial instruments, automobiles or other
     valuable property?
                                                                             • • Yes      •✓No

     If "Yes" describe the property and state its value.

6.   List the persons who are dependent on you for support, state your relationship to each person and
     indicate how much you contribute to their support, OR state NONE if applicable.

     Zieisha Bess     NONE
     Tug Zquan Bess   NONE

     I declare under penalty of perjury that the above information is true and correct.

     ☛ 1-5-07                    Mr. Don J. Bess
     ――――――――――                  ―――――――――――――――――――――――――
     DATE                        SIGNATURE OF APPLICANT

**NOTE TO PRISONER:  A Prisoner seeking to proceed without prepayment of fees shall submit an affidavit
stating all assets.  In addition, a prisoner must attach a statement certified by the appropriate institutional
officer showing all receipts, expenditures, and balances during the last six months in your institutional accounts.
If you have multiple accounts, perhaps because you have been in multiple institutions, attach one certified
statement of each account.**

## ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING ORDER

Upon the supporting affidavit of the plaintiff and accompanying memoradum of law, it is

ORDERED that defendants Warden. Carroll and Dep. Warden. Piercer, Dep. Warden. Burris, Security Chief. Holman, Capt. Burton show cause in room_____ of the United States Courthouse, _____
on the_____ day of_____, 2007, at____ o'clock, Why a preliminary injunction should not issue pursuant to Rule 65(a), Fed. R. Civ. P, enjoining the said defendants, their successors in office, agents and employees and all other persons acting in concern and participation with them, to provide a safe an humane condition of confinement in the area between the sliding doors in buildings MHU-21, MHU-22, MHU-23 by immediately arranging for the 12-8 shift officers to reduce the dangerous crowding of inmates into this area, pending a independent expert opinion by a State fire marshall concerning the capacity in which this area should hold.

It Is FURTHR ORDERED that effective immediately, to arrange for the plainiff's ankle to be examined by a qualified physician

It Is FURTHR ORDERED that this order to show cause, and all other papers attached to this application, shall be served on defendants Warden. Carroll and Dep. Warden. Piercer, Dep. Warden. Burris, Security Chief. Holman, Capt. Burton by_____, 2007, and the United States Marshals service is hereby directed to effectuate such service.

United States District Judge

DECLARATION IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Donald F. Bass declares under penalty of perjury:

1. I am the plaintiff in this case. I make this declaration in support of my motion for a temporary restraining order and preliminary injunction to ensure that i receive safe and humane condition of confinement and the necessary medical care.

2. As set forth in the complaint in this case, December 24, 2006, I was order to squeeze into a over crowded area with other inmates and confined to that area for three to four minutes creating a severe safety and health hazard, resulting in the injury to my ankle.

3. The unnecessary over crowding of inmates in this area creates conditions inherently hazardous to the safety of me and every inmate confined to the area with the overwhelming crowd.

4. The over crowding of this area is above the normal capacity preventing the guard from seeing what's taking place inside the crowd of inmates.

5. The Delaware correctional facility is severly under staff, the over crowding of inmates to this area only takes place on the 12-8 shift, when the facility has the fews guards on duty and usually the guard working this area is working overtime.

6. The confinement in such a small area makes the crowd of inmates overwhelming creating dangerous conditions that are extremely stressful for me, I feel like i am under constant pressure, always looking for one of my enemy to take advantage of the situation and stab me,

7. There is always other inmates confined to this area with serious medical conditions that are hazardous to my health, some of these inmates demonstrate severe psychiatric problems other's demonstrate illnesses that can cause health problems for me, leaving me extremely paranoid,

8. The homosexuals and molester take advantage of the situation by making unwanted sexual advances towards other inmate confined under these conditions, And it's hard to avoid the contact because of the size of the area and the amount of inmates order into this area,

9. I've filed three grievances concerning the over crowding to this area long before this incident occurred, A short time after filing my first grievance a fight broke out in this area in building 22 and one of the inmate was cut with a razor,

10. My right ankle is stiff and painful, I cannot walk normally and my ankle does not have the full range of motion it had before it was sprained

11. I am suffering irreparable harm in the form of continued physical and mental pain and suffering, and an increasing risk that i may be severely hurt under these condition, The question here is not if i will be hurt, The question here is "when" will i be hurt "again"?

12. For the reasons set forth in the memorandum of law filed with this motion, the plaintiff is entitled to a temporary restraining order requiring the defendant's to reduce the over crowding in the area between the slider in buildings MHU-21, MHU-22, MHU-23 and to arrange for an examination by a qualified physician, and to a preliminary injunction requiring the defendants to carry out those plans,

13. For the foregoing reasons, the court should grant the plaintiff's motion in all respects,

Pursuant to 28 U.S.C. 1746. I declare under penalty of perjury that the foregoing is true and correct.

Name  Donald F. Bass

Date  1-5-07

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A TRO AND PRELIMINARY INJUNCTION

## Statement of the Case

This is a civil right action brought under 42 U.S.C. §1983 by a state prisoner whose ankle was sprained when order into a area over crowded above the normal capacity and confined to that area, creating a severe safety and health hazard and presently being confined to the same area with an overwhelming crowd two time a day creating a danger for plaintiff's health and safety. The plaintiff seeks a temporary restraining order and a preliminary injunction to ensure the safety of plaintiff life and proper medical care.

## Statement of facts

As stated in the declaration submitted with this motion, the plaintiff was order into a over crowded area above the normal capacity were plaintiff's sprained his ankle, The plaintiff had filed numerous complaints concerning the danger of the over crowding of this area long before this incident occurred but the defendants fail to act and investigate or tryed to reduce the amount of inmate that occupies this area on the 12-8 shift, The over crowding of inmates in this area creates conditions inherently hazardous to the safety of the plaintiff and every other inmate confined to the area with such an overwhelming crowd, The plaintiff is experiencing contiuned pain, stiffness, and limited motion in his ankle and cannot walk properly.

The defendants against whom relief is sought are, respectively, the prison administrator, who is responsible for protceting the plaintiff from unreasonable risks arising from plaintiff's conditions of confinement.

## ARGUMENT

The Plaintiff Is Entitled To A Temporary Restraining Order And A Preliminary Injunction

In determining whether a party is entitled to a temporary restraining order or a preliminary injunction, courts generally consider several factor: whether the party will suffer irreparable injury, the "balance of hardships" between the parties, the likelihood of success on the merits, and the public interest. Each of these factors favors the grant of this motion.

A. The plaintiff is threatened with irreperable harm.
The plaintiff is alleging that he is being confined in an area above the normal capacity were he has suffered injury and continues to suffer an unreasonable risk of future harm and the Delaware Correctional Center prison administrator has fail to protect him, such conduct by prison officials is a clear violation of the Eighth Amendment. Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed. 2d 271 (1991). (noting that " A prion official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment.

As a matter of law, the continuing deprivation of constitutional rights constitutes irreparable harm. Elrod v Burns, 427 U.S. 347, 373, 96 S.Ct. 2673 (1976). This principle has bee applied in prison litigation generally, see Newsom v. Norris, 888 F.2d 371, 378 (6th Cir 1989) Mitchell V. Cuomo, 748 F.2d 804, 806 (2d Cir. 1984) Albro v. County of Onondaga, N.Y., 627, F. Supp. 1280, 1287 (N.D.N.Y. 1986) Williams V. Lane, 646 F.Supp. 1379, 1409 (N.D.Ill. 1986), aff'd, 851 F.2d 867 (7th Cir. 1988), cert. denied, 109 S.Ct. 879 (1989), and specifically in prison medical care case. Phillips V. Michigan Dept. of Corrections, 731 F. Supp. 792, 861 (W.D.Mich. 1990), aff'd, 932 F.2d 969 (6th Cir. 1991).

In addition the plaintiff is threatend with irreparable harm because plaintiff is being confined to the same area with a crowd above the normal capacity two times daily creating a severe safety and health hazard, and has been experiencing contiuned pain, stiffness, and limited motion in his ankle and cannot walk porperly. If he does not receive better humane conditions of confinement, he may loss his life or never walk normally again.


B. The balance of hardships favors the plaintiff

In deciding whether to grant TRO's and preliminary injunctions, courts ask whether the suffering of the          moving party if the motion is denied will outweigh the suffering of the non-moving party if the motion is granted. See, e.g. Mitchell V. Cuomo, 748 F.2d 804, 808 (2d Cir. 1984) (holding that dangers posed by prison crowding outweighed state's financial and administrative concerns) Duran V. Anaya, 642 F.Supp. 510, 527 (D.N.M. 1986) (holding that prisoners interest in safety and medical care outweighed state's interest in saving money by cutting staff).

In this case, the present suffering of the plaintiff and his potential suffering with the risk of losing his life or the permanent loss of normal usage of his ankle are enormous. The suffering the defendant's will experience if the court grants the order will consist of the security chief ordering the 12-8 shift to comply with correct procedure, a policy the defendant's already have in effect but are not following on the 12-8 shift, and to arrange for the plaintiff's ankle to be examined by a qualified physician, something that the defendant's do, and are obligated to do, for members of the prison population on a daily basis. The defendant's hardship amounts to no more then business as usual.


C. The plaintiff is likely to succeed on the merits.
The plaintiff has a great likelihood of success on the merits. What defendants have done — "denying humane conditions of confinement and medical treatment" — was specifically singled out by the Supreme court as an example of unconstitional "deliberate indifference" to prisoners who face substantial risk of serious harm. Wilson v. Seitier, 501 U.S. 294, 111 S.Ct 2321, 115 L.Ed.2d 271 (1991) Many other court have held that a prison officials "deliberate indifference" to a substantial risk of serious harm to an inmate violates the Eighth Amendment. See, Helling v. McKinney, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).
A subjective approach to deliberate indifference does not require a prisoner seeking a remedy for unsafe conditions to await a tragic event such as an actual assault before obtaining relief."

D. The relief sought will serve the public interest

In this case, the grant of relief will serve the public interest because it is always in the public interest for prison officials to obey the law. Duran v. Anaya, 642 F. Supp. 510, 527 (D.N.M. 1986) (Respect for law, particularly by officials responsible for the administration of the state's correctional system, is in itself a matter of the highest public interest.) See also Llewelyn v. Oakland County Prosecutors Office, 402 F. Supp. 1379, 1393 (E.D. Mich. 1975) (" the Constitution is the ultimate expression of the public interest").

## Point II

The Plaintiff Should Not Be Required To Post Security.

Usually a litigant who obtains interim injunctive relief is asked to post security. Rule 65(c), Fed. R. Civ. P. However, the plaintiff is an indigent prisoner and is unable to post security. The court has discretion to excuse an impoverished litigant from posting security. Orantes-Hernandez v. Smith, 541 F. Supp. 351, 385 n. 30 (C.D. Cal. 1982), J.L. v. Parham, 412 F. Supp. 112, 140 (D. Ga. 1976), rev'd on other grounds, 442 U.S. 584, 99 S.Ct. 2493 (1979) In view of the serious dangers confronting the plaintiff the court should grant the relief requested without requiring the posting of security.

For the foregoing reasons, the court should grant the motion in its entirety.

Date: 1-5-07

Name: Donald F. Bess #187042
Delaware Correctional Center
1181 Paddock Road, Smyrna, Del 19977