In The United States District Court
For The District of Delaware

Donald F. Bass,
    Plaintiff,

V.

Warden Thomas Carroll, Deputy Warden Piercer, Deputy Warden Betty Burris, Security Chief David Holman, Capt. Burton, Lt. Rider, IGC. Cpl. Lise Merson, Sgt. Glick, C/o Gavin, C/o Passley, C/o White, Sgt. Carter, C/o Canon, Lt. Welcome, S.Lt. Profaci, C/o Stevens, C/o Knowles, Sgt. Travis Branch, Sgt. Dymowski C/o Jordan
    Defendants,

AMENDED COMPLAINT

Jury Trial Demanded

1. The Plaintiff Donald F. Bass, was incarcerated at Delaware Correctional Center (D.C.C.) during the events described in this complaint.

2. Defendant's Gavin, Passley, White, Canon, Steven, Knowles, Jordan, are Correctional Officer employed at Delaware Correctional Center. They are sued in their individual and official capacities.

3. Defendant Lise Merson, is a corporal designated to handle inmate grievances at Delaware Correctional Center. She is sued in her individual and official capacities

4. Defendant's Glick, Carter, Travis Branch, Dymowski, are sergeants at Delaware Correctional Center. They are sued in their individual and official capacities.

5. Defendant's Rider, Welcome, are lieutenant at Delaware Correctional Center, they implement prescribed policies and procedures, insures the enforcement of institutional rules and regulations and interprets for staff and inmates. They are sued in their individual and official capacities.

6. Defendant Profaci is a Staff lieutenant at Delaware Correctional Center, she directs and participates in the maintenance of discipline, order, security and implement prescribed policies and procedures, insures the enforcement of institutional rules and regulations and interprets for staff and inmates. She is sued in her individual and official capacities.

7. Defendant Burton, is a Captain at the Delaware Correctional Center, and is in charge of over seeing operations on the 12-8 shift. He is sued in his individual and official capacities.

8. Defendant David Holman, is the security chief at Delaware Correctional Center and is in charge of the supervision and discipline of all correctional staff at Delaware Correctional Center. He is sued in his individual and official capacities.

9. Defendant Betty Burris is the Deputy Warden for administration at Delaware Correctional Center and the warden/warden's designee in charge of grievance procedure. She is sued in her individual and offical capacities.

10. Defendant Piercer is the Deputy Warden of operation at Delaware Correctional Center, Directs through subordinate supervisors and managers, the safety and security functions of the institution. He is sued in his individual and official capacities.

11. Defendant Thomas Carroll is the Warden of Delaware Correctional Center. He plans, directs, coordinates and monitors the security operations of the institution ensuring polices, procedures, rules, and reaulation enforcement. He is sued in his individual and official capacities.

12. All the defendants have acted, and continue to act, under of state law at all times relevant to this complaint.

Facts

13. On September 11, 2006 the plaintiff was moved to maximum Housing Unit (MHU) Building #23.

14. The (MHU) Building #23 is divided into 4 individual tiers. There is a design capacity of 196 inmates, 49 inmates per tier. There is 25 cell per tier

15. There is one sergeant assigned to 4 tiers. There's a diffident sergeant assigned to unit supervisor. There is a 12 a.m. to 8 a.m. sergeant. There is a 8 a.m. to 4 p.m unit sergeant and there is a 4 p.m to 12 a.m unit sergeant.

16. There is a lieutenant assigned to manage the entire maximum Housing Unit (MHU), one per each shift.

17. On September 12, 2006. the plaintiff's door was opened about 5:00 a.m for breakfast. The plaintiff got dressed and follow the other inmates off the tier to where a crowd of inmates had formed waiting on the first security slider to open.

18. When the first slider opened, the C/o order all the inmate into the area. By plaintiff being new to the tier the plaintiff was bring up the rear of the crowd.

19. The inmates started complaining about there not being enough room in the area to the C/o. The C/o replied "I guess you don't want to eat." Then the inmates began to hollar at each other and push pass each other.

20. After squeezing into the area the first slider was closed leaving the plaintiff confined to the area with a overwhelming crowd of inmates.

21. The plaintiff was held in this area approximately 3 to 4 minutes. In the 3 to 4 minute time period that the plaintiff was held in this area the window began to fog to fog up, due to the lack of oxygen.

22. The area is approximately 20 feet in length and 7 feet in width. There is no ventilation system, no toilet, drinking fountain or seats.

23. After arriving in the messhall and receiving mv tray, I had been eating approximately 5 minutes, when i heard the C/o holler "2 minutes" and 40 to 50 seconds later he said "Trays up, Let go, Trays up."

24. Without finishing my breakfast, I had to put my tray up.

25. When i got back to the security slider, there was several inmates standing in front of the security slider complaining about squeezing into such a small area. The C/o begin to order us into the area, and we complied.

26. Later that day approximately 11:40 a.m my door open for Lunch.

27. The Plaintiff followed the other inmate off the tier again. When the plaintiff reached the first sliding door, there was a few inmates standing around talking. And there was no problem entering into the slider.

28. Later that afternoon my door was open again for dinner. When the plaintiff reached the first slider, there was a small group of inmates and there was no commotion.

29. After receiving my Dinner tray, I was in the middle of my dinner and the C/o order the inmate to put there "tray up." I had only been seated approximately 5 minutes.

30. On September 13, 2006. At approximately 5:00 a.m. my cell door was open for breakfast. I got dressed and followed the other inmates off the tier again.

31. When the plaintiff came to the first slider, there was a large crowd of approximately 38-40 inmates standing around. The C/o began ordering the inmates into the area between the security sliders.

32. The inmates started hollaring and complaining about the lack of room in the area, and the inmates who failed to wash there faces and brush there teeth, and Known homosexual bumping and rubbing against thems. And the amount of time in which we were being held in there.

33. The C/O stated to plaintiff and other inmates," if they wanted to to eat, they had better inter the slider." and then started hollering at the inmate that had inter "to make room." Plaintiff along with other inmates began to push there way into the area.

34. After intering the area and the slider were closed, the plaintiff became extremely paranoid because of the tension between the inmate due to the pushing and shoving there way into the area.

35. Later that day approximately 11:30 a.m. the door was opened again for lunch. The plaintiff walked of the tier to the first slider and noticed, there was no crowd nor commotion. Just a small group of approximately 16 inmates waiting on the slider to open.

36. On September 14, 2006, approximately 5:00 a.m the plaintiff's cell was opened for breakfast. And again the plaintiff was ordered to squeeze and or push and shove his way into the area inorder to go to breakfast. Despite the pleading of plaintiff and other inmates concerns. The crowd of approximately 38 to 40 inmates had to squeeze in to the area if they wanted to eat.

37. On September 15, 2006. At approximately 5:00 a.m. the plaintiff's door open for breakfast. The plaintiff hurried off the tier in an attempt to get into the area between the slider ahead of the other inmates.

38. When the plaintiff enter the area there was approximately 12 other inmates already insider the area, the C/o began to order the other inmates into the area.

39. The crowd in the back of the plaintiff began to push the group forward in an attempt to make room for those in the back.

40. The inmate in front of the plaintiff had a open sore in the back of his head, the sore was leaking a thick yellowish matter with blood intertwined.

41. The second security slider closed and the plaintiff was forced to stand within a foot of the inmates sore. Plaintiff was so close he could smell and see the yellowish matter as it slowly rowed down the back of the inmates neck, there was appreximately 38 to 40 other inmate inside this small area restricting the plaintiff's movement.

42. There was no ventilation system in the area, causing the plaintiff to feel as if he was going to vomit. The plaintiff was force to stand there for appreximately 4 to 5 minutes.

43. When the plaintiff reached the messhall, plaintiff was still feeling sick, plaintiff asked the C/o if he could use the bathroom, the C/o told the plaintiff if he wanted to use the bathroom he had to wait into the group finished eating.

44. The plaintiff pointed out to the C/O that there was a bathroom right there in the messhall. The C/O stated "that bathroom is locked and you got to wait."

45. After a week of being order to squeeze into the area between the two security sliders with such a large crowd of inmates. The plaintiff went to the building sergeant on September 18, 2006.

45. On Septemer 18, 2006 when the doors open for breakfast the plaintiff followed the other inmates off the tier to the first slider, there was a large crowd of approximately 38-40 inmates standing around the first slider cursing and complaining about there being to many inmate for the area.

46. The plaintiff was at the back of the crowd, when the C/O started ordering the inmates into the area. The plaintiff told the C/O "there is completely to many of us to be forcing us all into this area at the same time."

47. The C/O said "if you want to eat, you better get your ass in that slider."

48. When the plaintiff arrived in the messhall, the plaintiff told sergeant carter that it was to many inmates being order into the area between the sliders at the sametime.

49. Sergeant Carter told the plaintiff "this was jail and plaintiff better get use to it if plaintiff wanted to eat."

50. On September 21, 2006 after eating lunch the plaintiff talk to lieutenat Welcome concerning the dangerous over crowding of the area between the sliders.

51. Lieutenat Welcome inform the plaintiff that "the policy on 8a.m to 4p.m is to send half the tier at a time, never the hole tier at the same time." And he had no control over how the 12a.m to 8a.m lieutenat ran breakfast.

52. On or about September 29, 2006 the plaintiff talked with staff lieutenat Profaci concerning the dangerous over crowding of the area between the two security sliders. The plaintiff inform S/Lt Profaci that the 12a.m to 8a.m shift were placing 38 or more inmate into the area between the security slider at the same time creating a dangerous safety and health hazard.

53. S/Lt Profaci stated "No one else is complaining, why are you?"

54. Plaintiff told S/Lt Profaci that he wasn't concerned about other inmates complaining. He is concerned about being order to squeeze into such a dangerous area and not having enough time to eat his meals.

55. S/Lt Profaci inform the plaintiff "that's not her policy to run the hole building at the same time, and it doesn't happen on her shift and

55. "the plaintiff had ten minutes from the time the last man in line sat down to finish plaintiff's food".

56. On October 3, 2006, the plaintiff's door was opend about 5:00 a.m for breakfast. The plaintiff followed the other inmates off the tier to where a crowd of inmates had formed outsided the first slider.

57. The inmates standing outside the slider was complaining about there not being enough room. The C/O replied "you guys are holding up the other's" "Lat's go the other's are trying to eat."

58. The plaintiff tryed to tell the C/o there wasn't enough room inside the small area for so many inmates. The C/o told the plaintiff "you been getting in there, and if you want to eat, you better get in there."

59. The plaintiff told the C/o "the facility does not have a policy that requires the hole tier to squeeze into that small area."

60. The C/o told the plaintiff "if you don't like it file a grievance."

61. The plaintiff filed and grievance when he returned to the tier. After filing the grievance plaintiff did not receive any acknowledgment from the institutions employee designated to handle inmate grievances.

62. The conditions continued. On October 19, 2006, The plaintiff was on his way to breakfast and enter the area between the two security sliders. After entering the area the c/o ordered the remainder of the inmates to "squeeze in."

63. Due to the overwhelming amount of inmates, the crowd begin pushing and shoving and swearing at each other, leaving the plaintiff to believe he better start fighting before someone hits him or he suffocates. there was all kinds of thoughts running through the plaintiff mind.

64. When the plaintiff arrived in the mess hall, the plaintiff told Sergeant Carter that the hole tier was released at the sametime again for breakfast. And there is more then 40 inmate in the area between the slider. And plaintiff was in fear for his safety.

65. Sgt. Carter told the plaintiff "he need to get use to it because that's how chow is ran" Plaintiff told Sgt. Carter that's not the institutions policy to run the hole tier at the sametime, and the area has a design capacity determined by the state fire marshal. Someone going to get hurt in there. Sgt. Carter stated "file another grievance" then begin to laugh.

66. When the plaintiff returned to the unit, the plaintiff filed an grievance concerning the matter. After filing the grievance plaintiff did not receive any acknowledgment from the —

66. institutions employee designated to handle inmates grievances.

67. On November 27, 2006 chow was called at 10:50 A.M. After arriving in the chow Hall a great deal of time passed and they were not serving chow. Sgt. Travis Branch gave all inmates a direct order "no talking in the chow Hall." The plaintiff walked over to Sgt. Branch and stated "I know there is no talking in the chow hall, here's my ID, I would like to know why they are not serving chow and i just have to stand here."

68. Sgt. Branch told me to get back in line before she sent me back to my building, she then placed her hand on her mace cannister. plaintiff asked her "if he could see the lieutenant." Sgt. Branch then ordered the plaintiff out of the Chow hall. Plaintiff asked Sgt. Branch "if she was going to bring the plaintiff a lunch" Sgt. Branch replied "you had your chance to eat."

69. As the plaintiff was being escorted out of the chow hall, S/Lt. Profaci was standing outside the door, plaintiff asked S/Lt. Profaci "would he receive a lunch tray back at the building." She replied "No." Plaintiff told her "I wanted my lunch." S/Lt. Profaci told the plaintiff "to move on."

70. When the plaintiff returned to the unit, the plaintiff filed an grievance because this was not the first time he was denied or forbidden the opportunity to eat, as a form of punishment.

71. On December 6, 2006, The plaintiff was hustled out of the chow hall without being allowed to complete his meal. Every day the plaintiff goes to chow he times the amount of time he is given to eat because he seldom gets an opportunity to finish a meal. The plaintiff was informed by S\Lt. Profaci before this incident that the policy was " we had ten minutes from the time the last man in line sat down"

72. When the plaintiff was order to put his tray up, He looked at his watch to see how much time he was given to eat, The showed 5 minutes and 41 seconds. The plaintiff informed C/o Knowles this is just about every day he works.

73. When the plaintiff returned to the unit, he filed an grievance concerning this matter. The plaintiff received a copy of the grievance but it wasn't heard by the grievance committee as of this date July 20, 2007.

74. On December 24, 2006 at approximately 4:50 A.M. Breakfast was called for A-tier in building 23. Plaintiff walked off the tier towards the first sliding door, where a crowd of inmates had formed

75. C/o Jordan was at the back of the crowed confirming the head count of thirty eight inmates over his radio transmitter. After confirming the count C/o Jordan begin to order the crowd to " Pack it in" to the area between the sliding doors.

76. The plaintiff complied with C/o Jordan order and enter the area, upon entering the area the inmates in the back of the crowd started hollering "move the fuck up" and began to push the crowd, the inmates in front began to hollar back "ain't no fucken room", C/o Jordan began to hollar "you've been gettina in there, lets go pack it in."

77. After all the inmate had squeezed into the area the door was closed, thirty eight inmates were confined to this area. Approximately 20 feet in length and 7 feet in width with no ventilation system, for approximately 3 to 4 minutes into the hall was clear of inmates.

78. While plaintiff was waiting on the door to open, the inmate infront of plaintiff turned around and looked plaintiff directly in the eyes and started hollaring "I'll kill him and take him to the moon" The plaintiff quickly realize this inmate was seriously mentally ill, because the inmate continued to talk to himself and burst into a tantrum. The plaintiff tryed to step backwards so he would not be hit by the mentally ill inmate, but do to the overwhelming crowd in the course of plaintiff stepping backwards, the plaintiff stepped on inmate Jason E. Turner foot and sprained plaintiff's ankle.

79. Inmate Turner pushed plaintiff into inmate Victor Sanchez. Plaintiff became upset that inmate Turner pushed plaintiff and grabbed inmate Turner up by his collar, inmate Sanchez intervend and stated "Come on man it's not his fault were in here like this."

80. After breakfast plaintiff went to C/O Jordan along with inmate Jason E. Turner and informed C/O Jordan plaintiff stepped on inmate Turner foot and sprained his ankle and would like to see the nurse. C/O Jordan told plaintiff to take a aspirin and started laughing. Plaintiff then asked C/O Jordan to write an incident report concerning the incident. C/O Jordan told plaintiff "if he didn't see it he couldn't write it up."

81. After the shift had changed, approximately 9:15 a.m. plaintiff went to C/O Johnson and explained what had happened on the 12 to 8 shift. Then requested to see the nurse again. C/O Johnson informed the nurse of the incident and plaintiff was taken out to see the nurse. The nurse said plaintiff's ankle had swollen up and gave plaintiff something for the pain.

82. On April 19, 2007 the plaintiff carried a banana to the chow hall. After arriving in the chow hall the plaintiff pull the banana out to eat with his lunch. Sgt. Carter approach me and told plaintiff to give him the banana. Plaintiff asked "why?" Sgt. Carter stated "I'm not going to ask you again" plaintiff complied and asked "what are you taking my banana for?" Sgt. Carter stated "I told you i wasn't going to ask you again," then called and had me escorted out of the chow hall.

83. Sgt. Dymowski and C/O Stevens came to escort me back to the building. I told Sgt. Dymowski i didn't eat and i would like a lunch tray. he stated "You had your chance to eat"

84. No one fed me and i didn't receive a incident report. I filed a grievance and requested 1.) To be compensated for the continuous deprivation of food as punishment for my actions. 2.) To be shown a copy of DOC procedures informing me of DOC policy forbidding me from being fed as a from of punishment.

85. The grievance was send back to me signed by the grievance chairperson stating "IGC does not award monetary damages"

86. The actions of defendants Carroll, Piercer, Burris, Holman, Burton, Rider, Merson, Glick, Gavin, Passley, White, Carter, Cauon, Welcome, Profaci, Jordan, Subjected the plaintiff to unconstitutional conditions of of confinement pursuant to a "practice" at the Delaware Correctional Center of subjecting the plaintiff to an substantial risk of serious harm and intolerable conditions of confinement. Constituted cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

87. The actions of defendants Carroll, Piercer, Burris, Holman, Welcome, Profaci, Carter, Branch, Dymowski, Knowles, Merson, Stevens, Subjected the plaintiff to an unconstitutional deprivation of food pursuant to a "practice and policy" at the Delaware Correctional Center constituting cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

88. The refusal of C/o Jordan to admit plaintiff to the prison medical center for treatment of plaintiff's injury to his ankle constitutes deliberate indifference to plaintiff's medical need in violation of the Eighth Amendment of the United State Constitution.

89. The failure of defendants Carroll, Piercer, Burris, Holman, Burton, Glick, Merson, Carter, Rider, Gavin, Passley, White, Welcome, Profaci, Canon, Jordan, to curb the substantial risk of serious harm under such hazardous condition costituted deliberate indifference and contributed to and proximately caused the above described violation of Eighth Amendment constitution.

   WHEREFORE, plaintiff requests that the court grant the following relief:

A. Issue a declaratory judgment stating that:

1. To forbid the plaintiff from being fed as a from of punishment by defendants Carroll, Piercer, Burris, Holman, Welcome, Profaci, Carter, Branch, Dymowski, Knowles, Merson, Stevens, Violated the plaintiff's rights under the Eighth Amendment to the United States Constitution.

2. The mental and physical injury suffed by the plaintiff's intolerable conditions of confinement by defendants Carroll, Piercer, Burris, Holman, Welcome, Profaci, Carter, Branch, Dymski, Knowles, Merson, Stevens, Canon, Jordan, Passley, White, Glick,

Burton, Gavin, Rider, violated the Plaintiff rights under the Eight Amendment to the United States Constitution and constituted gross negligence or deliberate indifference on the part of their superiors and municipality.

B. Award compensatory damages jointly and severally against defendants Carroll, Piercer, Burris, Holman, Burton, Rider, Merson, Glick, Gavin, Passley, White, Carter, Canon, Welcome, Profaci, Stevens, Knowles, Travis Branch, Dymowski, Jordan. for the mental and physical injuries sustained as a result of the plaintiff's intolerable conditions of confinement.

C. Award punitive damages against defendants Carroll, Piercer, Burris, Holman, Burton, Rider, Merson, Glick, Gavin, Passley, White, Carter, Canon, Welcome, Profaci, Stevens, Knowles, Branch, Dymowski, Jordan.

D. Grant such other relief as it may appear that plaintiff is entitled.

I declare under penalty of perjury the foregoing is ture and correct.

Signed ___24___ day of ___July___, _2007_

_Mr. Don J. Boss_
signature of Plaintiff



Donald [illegible]
SBI # 187C
Delaware
1181 Paddock Road
Smyrna, De 19977

Peter T. Dalleo
Clerk of Court
844 N. King Street, Lockerbox 18
Wilmington, Delaware 19801-3570



USMS
X-RAY